## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TOMIKA MILLER and the
ESTATE OF RAYSHARD BOOKS,
by and through TOMIKA MILLER,
Administratrix,

      Plaintiffs,

v.

CITY OF ATLANTA, GEORGIA,
GARRETT ROLFE, and DEVIN
BROSNAN,

      Defendants.

CIVIL ACTION FILE NO.
1:21-cv-03752-SDG

## CITY OF ATLANTA, GEORGIA'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS

COMES NOW CITY OF ATLANTA, GEORGIA (the "City"), Defendant

herein, and files and serves this Brief in Support of Motion to Dismiss, showing this

Honorable Court as follows:

## I.    INTRODUCTION

The death of Rayshard Brooks has become well-known, as it was the subject

of national news, protests, and civil unrest.  On June 12, 2020, the law enforcement

officers named as Defendants in this lawsuit responded to a 911 call that Brooks fell

asleep in the drive-thru line at a Wendy's restaurant.  The officers engaged in a back-

and-forth with Brooks before they eventually determined he should be arrested.  He

1

resisted, and ultimately, Brooks took control of an officer's Taser, fired it at the officer and was fatally shot by one of the responding officers.

In this case, Plaintiffs and the individually named officers differ about the circumstances surrounding the shooting of Brooks and the necessity of the officers' actions.  Whether the officers' decisions were correct, whether the use of force was appropriate, and whether Brooks posed a serious threat to the officers or others will be addressed.  That said, to affix liability upon the City, the law requires more than just what happened on the street that night; and it is regarding this additional burden that Plaintiffs have failed to adequately plead an actionable claim.  Plaintiffs also allege a failure on the part of the officers to deliver timely medical care to Brooks but do not attempt to hold the City liable for those allegations.

Of note, the City disagrees with Plaintiffs' recitation of the facts in the Complaint but, as it must, will accept them as true for purposes of this Motion and Brief.  Regardless of the interpretation of the facts, the City of Atlanta is not liable as a matter of law.

Plaintiffs attempt to affix liability to the City in two ways.  In neither way do Plaintiffs nudge their claims across the line from "conceivable" to "plausible" as required by the *Iqbal/Twombly* pleadings standards, and their reliance on conclusory pleadings likewise fail to make the day.

First, Plaintiffs allege the City maintains a custom and/or practice of turning a blind eye to officers' false reporting of use of force encounters. Plaintiffs' referencing these sporadic, unrelated, investigated, and outdated occurrences do not assign liability to the City. Of note, no such circumstance is alleged to have occurred here.

Almost as an afterthought, Plaintiffs allege that the City failed to train its officers on the circumstance where a fleeing victim may have posed an immediate threat to bodily harm or death, but that danger passed. Naturally, Plaintiffs cannot cite to specific instances that would put the City on notice of the need to train on this specific subject. Without such a showing, this claim, too, fails.

To the extent there may be any 12(b)-worthy allegation of liability as against the officers, the City is nevertheless entitled to dismissal as Plaintiffs fail to set forth an actionable claim under *Monell v. Department of Social Services of the City of New York City*, 436 US 658 (1978).

## II.   FACTS

The subject event occurred on June 12, 2020 after an employee at the Wendy's restaurant called 911 to report that Brooks fell asleep in his vehicle and stopped the drive-thru line. (Doc. 1, ¶ 9). Officer Brosnan was dispatched to the scene and quickly observed the unusual scene of Brooks deeply asleep at the wheel of a vehicle in the drive thru. (Doc. 1, ¶¶ 10-11). Officer Brosnan directed Brooks to park his

vehicle in a nearby open parking space, at which time Brooks fell back asleep.  (Doc. 1, ¶¶ 17-19).  After Officer Brosnan woke up Brooks a second time, Officer Brosnan and Brooks engaged in a conversation for a few minutes before the arrival of Officer Rolfe.  (Doc. 1, ¶ 22).

After discussing the matter with Officer Brosnan, Officer Rolfe asked Brooks to step out of the vehicle, where he patted him down to confirm that he had no weapons.  (Doc. 1, ¶¶ 26-28).  Officer Rolfe directed Brooks to complete a series of field sobriety tests and a preliminary breath test for alcohol.  (Doc. 1, ¶¶ 30-36).

Officer Rolfe determined that an arrest was proper and began placing handcuffs on Brooks to take him into custody.  (Doc. 1, ¶ 42).  Brooks resisted arrest and Officer Brosnan drew his Taser.  (Doc. 1, ¶ 46).  At that point, Brooks stole the Taser from Officer Brosnan, so Officer Rolfe deployed his Taser at Brooks.  (Doc. 1, ¶¶ 50-51).  Brooks then began to run away from the officers.  (Doc. 1, ¶ 53).

While running away, Brooks shot the Taser that was now in his possession.  (Doc. 1, ¶ 56).  According to the Complaint, he simply "ejected the prongs from Brosnan's Taser aimlessly into the air."  (Doc. 1, ¶ 56).  While Brooks was running, Officer Rolfe fired three shots using his firearm, two of which hit Brooks.  (Doc. 1, ¶ 59).  Brooks allegedly was not given medical attention until the ambulance arrived.  (Doc. 1, ¶ 66).  He passed away at the hospital after surgery.  (Doc. 1, ¶ 66).

Plaintiffs conclude the factual allegations in the Complaint without implicating the City, only adding substance to their allegations against it in the later Argument and Citation of Authority section of the Complaint. For continuity of argument and for ease of review, the City will likewise address the specific facts Plaintiffs claim lead to municipal liability in the Argument and Citation of Authority Section below.

### III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Applicable Standards.

Mere conclusory allegations or bare legal conclusions are generally not sufficient to withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. *See Briehl v. General Motors Corp.*, 172 F.3d 623, 627-28 (8th Cir. 1999). In general, a motion to dismiss under 12(b)(6) asserts that even if the well pleaded material allegations of the complaint are true, such allegations are legally insufficient. Such a motion should be granted when it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which can be proved in support of the claim. *See Haines v. Kerner*, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint. *See Am. Dental Ass'n v. Cigna Corp.*, 605

F.3d 1283, 1290 (11th Cir. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." *Id.* This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663.   Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." *Am. Dental Ass'n.*, 605 F.3d at 1290.  In determining plausibility, the court should "draw on its experience and common sense."  *Iqbal*, 556 U.S. at 664.  Moreover, it is proper for the court to infer "'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer."  *Am. Dental Ass'n*, 605 F.3d at 1290 (*quoting Iqbal* and relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1289 (*quoting Twombl*y, 550 U.S. at 570).

**B.    Plaintiff's *Monell* Claims Should be Dismissed.**

Although they do not allege it occurred in this case, Plaintiffs base their recovery against the City on two theories: (1) the City's purported widespread and persistent pattern of "accepting false versions of police officers concerning the officers' use of physical force. The effect of this practice resulted in the death of

Rayshard Brooks." (Complaint, ¶ 85); and (2) the City's supposed failure to train its officers that they may not use deadly force against a fleeing suspect after justifying circumstances have passed and no longer exist resulted in the shooting death of Brooks.

### 1.  Customs and Practices

#### a.  Overview of Claim Presented; 42 U.S.C. § 1983 Municipal Liability Basics

Plaintiffs begin their attempt to hold the City liable for the individual officers' actions by arguing that the City of Atlanta Police Department ("APD") "has a custom and practice of accepting false versions of police officers concerning the officers' use of physical force."  (Doc. 1, ¶ 85).  Plaintiffs' theory is further elaborated in paragraph 86, which explains the "custom and practice" as follows: (1) an officer commits an act of violence or an act of other breach of the constitutional rights of a civilian; (2) the officer falsely reports that he or she did not commit a constitutional violation or engage in the act of violence, and (3) all officers accept the officer's false statement and refuse or fail to report the physical misconduct or adopt the officer's false version of events despite the immediately available contradictory evidence. (Doc. 1, ¶ 86).

Municipal liability under § 1983 may not be grounded on a theory of *respondeat superior. Monell v. New York Dept. of Social Services,* 436 U.S. 658 (1978).  That said, it is "well established that a municipality may be held liable under

§ 1983 . . . when the deprivation at issue was undertaken pursuant to [municipal] 'custom' or 'policy.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991).  Municipal liability may be based on, among other things, "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." Congruently, Plaintiff may establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice coupled with deliberate indifference toward same.  *Church v. City of Huntsville*, 30 F. 3d 1332, 1342–43 (11th Cir. 1994).

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik v. City of St. Louis*, 485 U.S. at 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-68 (1970)).

### b.    Alleged History of the City's Customs and Practice

In an effort to prove a custom, Plaintiffs first sets out seven (7) use of force instances, beginning all the way back in 2003.  It is unclear how these vague, incomplete descriptors show any pattern of a custom of officers "accepting" false statements of other officers.  More, it is unclear how purported misconduct between 2003 to 2015 in any way could have proximately led to Officer Rolfe's split-second

decision to act as he did.  These "incidents" are too temporally removed from this action and are otherwise insufficient to plead actionable *Monell* liability.  The alleged "incidents":

- **2003 – Childs** (use of force against handcuffed arrestee inside precinct)

- **2006 – Clay** (use of force against suspect)

- **2006 – Lockette** (use of force during investigatory stop)

- **2011 – Gibbs** (us of force against handcuffed man during the execution of a warrant)

- **2011 – Parks** (use of force in an unspecified situation); Chief rejects Atlanta Citizen's Review Board ("ACRB") recommendations.

- **2014 – Cato** (use of force in an unspecified situation); Chief rejects ACRB recommendations)

- **2015 – William**s (use of force situation in a hotel room)

(Doc. 1, ¶ 87).

    To show how each cited example fails to tie into the officers' use of force in this case, the City addresses them one at a time.[1]  Plaintiffs' first example is the 2003 *Childs* investigation, where they take issue with the weight of the evidence, and that the investigation closed without finding inappropriate use of force.  That's it.  As

---

[1] Throughout these examples, Plaintiffs refer to Officers Gardner and Streeter as Defendants.  However, Officers Gardner and Streeter are not defendants in this lawsuit.

with every single other example set out in the Complaint, both alone, and in tandem

with the other examples, this incident does not nudge Plaintiffs' claim across the line

from "conceivable to plausible."

Not only do Plaintiffs not show anything at all to conclude anyone accepted

false statements, as in several other places, the Court is invited to simply conclude

that Plaintiffs are correct in their legal conclusion that this investigation was

somehow constitutionally offensive.  That is not how it works.  On a 12(b) or other

pleading sufficiency motion, a court does not accept legal conclusions supported by

conclusory allegations simply because they are pled in a Complaint.

> [T]he tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice.

*Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).

Plaintiffs are likewise dissatisfied with the City's handling of the second

example, the 2006 *Clay* investigation, because again, there were no findings

regarding the use of force.  Plaintiffs do not like that the Atlanta Police Department

("APD") opened and closed its investigation without confirming or denying the use

of excessive force.  Just where untruths were told and accepted is difficult to find.

Turning to the 2006 *Lockette* case, there were two reversals of two separate

findings of excessive force; ultimately finding the allegations "not sustained," and

in connection with those ultimate findings.  Plaintiffs take issue with the lack of

substance explaining the reversals but plead nothing to show how or why the outcomes should have been different. This vague monologue does not tie anything of import together in any way.

In *Weems*, a 2011 use of force incident, the investigation was closed with findings regarding use of force. That is all Plaintiffs say about *Weems*.

In the 2011 *Parks* case, Plaintiffs claims the APD reversed an Atlanta Citizens Review Board ("ACRB") finding of excessive force, ultimately determining that the use of force there (pulling of hair) was reasonable under the circumstances. The City did not utilize a Computer Voice Stress Analysis ("CVSA"), which apparently Plaintiffs finds problematic. Plaintiffs fail to explain why their preference impacts the claims here nor does case law support the idea that CVSA is determinative or required. Plaintiffs do not make even make the effort to explain why the use of force was not reasonable (presumably taking issue with the ultimate finding), and instead complain someone lied, and someone accepted the lie. These unsubstantiated leaps of logic are just what *Iqbal* and *Twombky* denounced over a decade ago.

Continuing, the 2014 *Cato* incident involved pepper-spraying, a reversal of the ACRB recommendation of suspension, and again, no investigation into failure to intervene, in a case where the ultimate findings were that the use of force was determined to be justified. Plaintiffs' statement regarding the failure to intervene is

completely irrelevant to the case at hand.  This incident does nothing to advance Plaintiffs' cause.

Pausing, the City notes that throughout their recitations, Plaintiffs continue to argue something about the City's failing to conduct meaningful investigations into instances of failure to intervene.  There is no failure to intervene claimed in this case, and so it is curious as to why these allegations permeate the Complaint.

In the 2015 *Williams* matter, failure to use CVSA is the only misgivings Plaintiffs identify, other than to say they disagree with the closing of the investigation without any use of force findings.

Overall, every one of these instances referenced above was investigated without exception.  None of these instances refer or otherwise deal with an officer's false reporting of the use of force.  Therefore, none of these examples sufficiently prove the custom and/or practice as alleged by Plaintiffs.

The City notes that the precise instances above have been pled by Plaintiffs' counsel in another lawsuits.  *Taniyah Pilgrim and Messiah Young v. City of Atlanta, Georgia et al.*, United States District Court for the Northern District of Georgia, Civil Action No. 1:21-cv-2472. In that case, Plaintiffs' counsel use those examples as purported *Monell* evidence of a pattern of excessive force stemming from the City's failure to investigate instances of officers failing to intervene in use of force matters.  In that case, as here, the City has moved to dismiss.  This time, however,

12

Plaintiffs' counsel not only retools these instances in a classic square peg/round hole scenario, they have decided to go even further.

Now equipped with the understanding the City contends that whatever alleged illicit practices were going on from 2003 to 2015 fail for lack of temporal proximity, among other things, Plaintiffs' counsel takes a stab at pointing to two more recent instances.

To that end, Plaintiffs next add the following incidents in support of their claim:

- **2012 – Berger** (use of force during arrest)

- **2010 – Brooks** (use of force during arrest)

- **2019 – Doe** (use of force while chasing fleeing suspect)

(Doc. 1, ¶¶ 88- 98).

Starting with the 2012 *Berger* case, where an officer allegedly struck the suspect's knee and tore his ACL and caused other bodily harm during his arrest, Plaintiffs disagree with the City's acceptance of the officer's denial of the use of force upon the suspect. According to Plaintiffs, excessive force in this case was found by a federal court. What Plaintiffs do not do is plead with any particularity what false statements were made, who or what it is that accepted false statements, or anything else to suggest anything other than the conclusory belief that the City did something unseemly. As opposed to perhaps just getting it wrong… .

Retreating to 2010, Plaintiffs cite the *Randal Brooks* case.  Plaintiffs allege that Brooks was tackled to the ground and was paralyzed as a result of the physical force applied to his spine.  Although the nature of the spinal injury was documented (by whom?) to be consistent with a knee positioned on Randal Brooks' spine, the officers involved denied that they applied any force to Randal Brooks' cervical spine, which the City "continued to accept."  (Doc. 1, ¶ 93).  Again, there is no discussion as to the outcome of an investigation or the punishment directed towards the officers involved.  There is nothing pled regarding whether this instance follows the pattern alleged by Plaintiffs.  And, of course, both the cited instance and the *Berger* case took place 8-10 years prior to the use of force here, well outside the temporal proximity required to show *Monell* liability.

Armed with what they believe is a fix on the City's temporal proximity argument, Plaintiffs' counsel here adds a more recent example they believe gets them home.  They cite the 2019 *Robert Doe* case, where Plaintiffs claim that an officer "forcefully ran into" a fence where Robert was hanging.  Robert fell and shattered his legs, among other injuries.  Plaintiffs deem the officer's report that he was attempting to reach for Robert as false.  Plaintiffs state that "graphic video evidence" contradicted the officer's report, but the City accepted his denial of the use of force.  Like the other examples, nothing else is explained.  Even if there was something to this 2019 example (or the other earlier ones), that is the only example

14

cited since 2015.  One instance in a five-year span is not the stuff of a custom or policy worthy of § 1983 liability (discussed more fully below).

Finally, Plaintiffs turn to two irrelevant use of force instances involving Defendant Officer Rolfe.  This appears more to be an attempt to poison the narrative than to show *Monell* liability based on Plaintiffs' specious acceptance of false statements theory.

According to the Complaint, Officer Rolfe shot Jackie Harris in 2015 after his vehicle was incapacitated and Harris no longer posed an imminent threat of harm to anyone else.  The initial police report made no reference to firing a gun.  However, there is no other reference to other reports or investigations of this incident.  There is no reference to whether the City accepted the false statement, or that it was indeed found to be false.  There is no reference to whether the initial report was amended accordingly, or whether the City turned a blind eye toward anything. This bare-bones, vague recitation of a 2015 incident does not relate to the serpentine custom that Plaintiffs have alleged.

Finally, Plaintiffs allege that Officer Rolfe used excessive force against Charles Johnson, Jr. in May of 2020.  Of course, in conclusory fashion, Plaintiffs declare that use of force was inappropriate.  The Complaint is devoid of any facts regarding falsely or under reporting the use of force.  It does not mention whether an investigation occurred or the authenticity of the claim.   We are without

explanation as to how this relates to the alleged widespread custom or practice of the City.

Plaintiffs' diverse collection of irrelevant cases are insufficient to survive a 12(b)(6) Motion to Dismiss regarding an alleged widespread custom or practice by the City.  The allegations simply do not support the conclusions asserted by Plaintiffs.  There are no adequate instances where the City turned its back on false reporting or under-reporting of the use of force.  Most of the cited examples do not even involve false reporting.  Likewise, most of the cited incidents were investigated and Plaintiffs' disagreement with the outcomes of the investigations is not grounds for liability.  Even accepting Plaintiffs' allegations as true, their custom/practice claim must fail.

### c.      Plaintiff Fails to Plead a 12(b)(6) Sufficient Allegation of Custom

Plaintiffs fail to properly allege the existence of a widespread custom or practice due to the dates of the examples.  Other than the *Robert Doe* case from 2019, the temporal proximity between the cited incidents and the case at hand renders the previous examples worthless.   In the first group of examples, the most recent incident was the *Williams* case, occurring in 2015.  This is five years before the incident at issue. Five years between the investigatory outcome and the incident at issue is too remote in time to state a claim.  See *Khoury v. Miami-Dade County School Board*, 2021 WL 281762 (11th Cir. July 7, 2021) (3 years between last

16

identified evidence of custom and the date of loss to remote); *Church v. City of Huntsville*, 30 F. 3d 1332 (11th Cir. 1994) (1-2 years between last identified evidence of custom and the date of loss); *Smith v. City of Moultrie*, 2007 WL 2668138 (M.D. Ga. 2007) (approximately 1.5 years between latest complaint and subject incident); *Rodriguez v. County of Westchester*, 2017 WL 118027 (S.D.N.Y. 2017) (over 6 years between the supposed notice and subject incident); *Thomas v. Westchester County*, 2013 WL 3357171 (S.D.N.Y. 2013) (less than 2 years between the supposed notice and subject incident).

Plaintiffs attempt to throw in the *Johnson, Jr.* case from May of 2020 to cure the temporal proximity problem. However, as mentioned above, this case is completely irrelevant to this legal analysis as it does not involve false or under reporting of the use of force.

Thus, the only arguably relevant prior example recent enough to offer any evidentiary value is the 2019 *Robert Doe* case. However, the facts of that case are vastly different and there is not enough details in the pleading to determine if the "custom" even occurred. Nonetheless, binding case law is clear that one prior incident is insufficient to prove a widespread custom or practice. See, e.g., *Doe v. School Bd. Of Broward County, Fla.*, 604 F. 3d 1248, 1266 (11th Cir. 2010) (explaining that a few isolated instances will not suffice to show a widespread custom or policy); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985)

(explaining that inferring the existence of a policy based on  isolated misconduct of a single, low-level officer would amount to holding the a city liable under the theory of *respondeat superior*); *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally, random acts or isolated incidents are insufficient to establish a custom or policy."); *Brinkley v. Waters*, 2021 WL 1233352, *10 (S.D. Ga. 2021) (holding that one prior complaint was an isolated occurrence and could not demonstrate that sexual misconduct had become a widespread practice).

### 2.    Failure to Train.

In Count Four, Plaintiffs allege that the City's failure to train its officers of a very specific scenario caused this unfortunate death.  Plaintiffs allege that the City "failed to train its officers that they may not use deadly force to [sic] against a fleeing suspect when the circumstances which could have arguably justified such deadly force have later passed and no longer exist."  (Doc. 1, ¶ 109).  Plaintiffs' allegation focuses on a very specific issue: the failure to train APD officers on the use of deadly force against a fleeing suspect when the circumstances may have justified deadly force but then passed.

The failure to train or supervise creates liability only in limited circumstances, where there is inadequate training or supervising of the employees, this failure to train or supervise is a policy, and the policy causes the violation of a citizen's

constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 389 U.S. 378, 387-91 (1989)).

Since cities rarely have an express policy of inadequately training or supervising its employees, a plaintiff may prove a failure by showing a "deliberate indifference" to the rights of the citizens. *Gold*, 151 F.3d at 1350. "Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Mingo v. City of Mobile, Ala.*, 592 Fed. Appx. 793, 799-800 (11th Cir. 2014). Plaintiffs "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id*. Without notice of a necessity to train or supervise, a municipality is not liable as a matter of law. *Id*. at 1351. Additionally, when relying on past complaints, a plaintiff must demonstrate that the complaints had merit. *Id*.

Here, Plaintiffs do not present any past incidences to support their failure to train claim. Instead, they simply rely on a conclusory statement that the City's failure to train its officers not to use deadly force to apprehend a fleeing suspect resulted in the death of Brooks. (Doc. 1, ¶ 109).

Plaintiffs' threadbare allegations of failure to train simply do not make the day.

> Plaintiffs have offered no well-pleaded facts to support the legal conclusion that the City was on notice of a pattern or practice of unconstitutional uses of force by officers in its employ against mentally impaired persons or others who could not comply with instructions, or that it had a custom of ignoring violations or failing to discipline officers who engaged in such behavior. See Nouri, 615 Fed. App'x at 296-97 (plaintiffs complaint found fatally deficient where it failed to set forth facts showing pattern of misconduct or reports to municipal officials in support of custom of tolerance claim against municipality); Lowe v. McMinn Cnty., No. 1:15-CV-95, 2015 WL 5177734, at *5 (E.D. Tenn. Sept, 4, 2015) (plaintiffs allegation that municipality had not instituted a proper policy for dealing with persons in the midst of a mental break from reality and failed to train officers to handle confrontations with such persons insufficient to state a claim under §1983 absent allegation of a pattern of constitutional violations by untrained employees is insufficient to establish deliberate indifference); Sexton v. Kenton Cty. Det. Ctr., 702 F. Supp. 2d 784, 791 (E.D. Ky. 2010) (holding that a municipality's alleged failure to discipline officers in a single instance, as opposed to a systemic policy, is insufficient to survive a motion to dismiss). Nor have the Plaintiffs pleaded any specific facts to suggest that the City failed to adequately prepare for recurring situations where a constitutional violation would be likely to take place. See Munson v. Bryan, No. 3:15-cv-0078, 2015 WL 4112429, at *5 (M.D. Tenn. July 8, 2015) (where plaintiff failed to plead any specific facts to indicate municipality failed to adequately prepare for recurring situations in which constitutional violations may occur, there were no grounds to support a §1983 claim against the county defendant).

Epperson v. City of Humboldt, Tenn., No. 1501074, 2015 WL 6440740 at *6 (W.D. Tenn. Oct. 21, 2015).

For all of these reasons, Plaintiffs' failure to train claim fails and must be dismissed.

## IV.   <u>**CONCLUSION**</u>

The City of Atlanta is simply not liable for the unfortunate death of Rayshard Brooks.  Plaintiffs struggle unsuccessfully to tie the City in with the actions of Officer Rolfe and Officer Brosnan.  The alleged custom or practice by the City was simply nonexistent, which is apparent from the text of the Complaint.  Plaintiffs' failure to train claim is bare, because the facts simply do not support such a finding The City of Atlanta should be dismissed from this lawsuit.

Respectfully submitted this 22nd day of October, 2021.

| | |
|---|---|
| | **HALL BOOTH SMITH, P.C.** |
| 191 Peachtree Street, N.E.<br>Suite 2900<br>Atlanta, GA 30303-1775<br>Tel:  (404) 954-5000<br>Fax:  (404) 954-5020<br>dware@hallboothsmith.com<br>pfriduss@hallboothsmith.com<br>nkinsley@hallboothsmith.com | */s/ R. David Ware*<br>*/s/ Phillip E. Friduss*<br>R. DAVID WARE<br>Georgia Bar No. 737756<br>Phillip E. Friduss<br>Georgia Bar No. 277220<br>Nicholas A. Kinsley<br>Georgia Bar No. 276862<br>*Counsel for Defendant City of Atlanta* |

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TOMIKA MILLER and the
ESTATE OF RAYSHARD BOOKS,
by and through TOMIKA MILLER,
Administratrix,

     Plaintiffs,

v.

CITY OF ATLANTA, GEORGIA,
GARRETT ROLFE, and DEVIN
BROSNAN,

     Defendants.

CIVIL ACTION FILE NO.
1:21-cv-03752-SDG

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **CITY OF ATLANTA, GEORGIA'S BRIEF IN SUPPORT OF MOTION TO DISMISS** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.  Counsel of Records are:

L. Chris Stewart
Justin Miller
Dianna J. Lee
Stewart Miller Simmons Trial Attorneys
55 Ivan Allen Jr. Boulevard
Suite 700
Atlanta, Georgia 30308
cstewart@smstrial.com
jmiller@smstrial.com
dlee@smstrial.com
*Attorneys for Plaintiffs*

G. Brian Spears
Jeff Filipovits
Spears & Filipovits, LLC
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
bspears@civil-rights.law
jeff@civil-rights.law
*Attorneys for Plaintiffs*

Respectfully submitted this 22nd day of October, 2021.

| | |
|---|---|
| 191 Peachtree Street, N.E.<br>Suite 2900<br>Atlanta, GA 30303-1775<br>Tel:  (404) 954-5000<br>Fax:  (404) 954-5020<br>dware@hallboothsmith.com<br>pfriduss@hallboothsmith.com<br>nkinsley@hallboothsmith.com | **HALL BOOTH SMITH, P.C.**<br><br>*/s/ R. David Ware*<br>*/s/ Phillip E. Friduss*<br>R. DAVID WARE<br>Georgia Bar No. 737756<br>Phillip E. Friduss<br>Georgia Bar No. 277220<br>Nicholas A. Kinsley<br>Georgia Bar No. 276862<br>*Counsel for Defendant City of Atlanta* |