IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TOMIKA MILLER and the ESTATE OF RAYSHARD BROOKS, by and through Tomika Miller, Administrator, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | FILE NO. 1:21-CV-03752-SDG |
| v. | : : | |
| THE CITY OF ATLANTA, GEORGIA; GARRETT ROLFE, in his individual capacity; DEVIN BROSNAN, in his individual capacity, | : : : : : : | |
| Defendants. | : | |

## REPLY BRIEF OF DEFENDANT GARRETT ROLFE
## IN SUPPORT OF MOTION TO DISMISS

COMES NOW, Defendant Garrett Rolfe[1], and files this Reply Brief in Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 26).

Defendants' motion was based on indisputable video that the United States Supreme Court, and the Eleventh Circuit have held that the trial courts may consider in ruling on dispositive motions, including motions to dismiss. The United States Supreme Court in <u>Scott v. Harris</u> held that verbal testimony and conclusory allegations cannot be used to dispute what is clearly visible on video. Recognizing the devastating impact of

---

[1] Defendant Devin Brosnan has been dismissed from this action. (Doc. 41).

the videos in this case the Plaintiffs have moved to exclude this Court from considering

the video, and failed to address it in their response.[2]  Rather, Plaintiffs continue to rely

upon the allegations of the Complaint that are contradicted by the video.

The Court should consider the video, consistent with <u>Scott v. Harris</u>, because the

motion asserts both qualified and official immunity which are intended to be immunities

from litigation, not merely from liability.  <u>Scott v. Harris</u>, 550 U.S. 372, 376 n.2, 127 S.

Ct. 1769, 1774 n.2 (2007) The Court should not disregard indisputable video and force

public officials to litigate matters that should be dismissed.

Notwithstanding the pressure to equip law enforcement officers with body and

dash cameras, Plaintiffs now ask the Court not to consider the very video that records

the events she is suing over.  Generally, civil rights plaintiffs have begun to assiduously

avoid referencing video in complaints in an attempt to prevent courts from considering

---

[2] Simultaneously with this Reply, Defendants filed a Response to Plaintiffs' Motion and placed the videos in the record.  In that response, Defendant notes that Plaintiffs' counsel Chris Stewart has repeatedly relied on the video in discussing this case with the press. In sum, the Eleventh Circuit requires neither attachment to the complaint nor evidentiary authentication, but merely that the materials be "central to the plaintiff's claims and … undisputed in terms of authenticity."  <u>Maxcess, Inc. v. Lucent Techs., Inc.</u>, 433 F.3d 1337, 1340 (11th Cir. 2005) (citing <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1135 (11th Cir. 2002)).  The video could not be more centeral, and as argued in more detail in the response to the motion to exclude, Plaintiffs do not actually contest the authenticity of any of the video.  <u>Compare</u> <u>Horsley</u>, 304 F.3d at 1135 (noting "Horsley disputes the authenticity of those transcripts" and that the transcripts were partial and did not include the defamatory words alleged in the complaint.).

unfavorable videos. This fundamentally violates the Supreme Court's instructions in Scott v. Harris and should not be allowed.

The video in this case is like a contract. The video shows the events that established and govern the parties' "relationship" in the same way a contract sets forth in written words the contours of the parties' relationship. Therefore, whether or not the Plaintiffs rely upon or reference the video, it is the event to which the lawsuit is addressed. In other words, whether the video itself is referenced in the Complaint, the events clearly shown in the video are referenced in the Complaint and the import of Scott v. Harris and its progeny is that the Court should consider that video.

## II.    BRIEF RESPONSE TO PLAINTIFFS' FACTUAL SUMMARY

Plaintiffs' "Relevant Factual Summary" relies exclusively on the conclusory allegations in the Complaint and ignores the clear video that Scott v. Harris compels this Court to consider.[3] The assertion that "Brooks' physically resisted but only to the extent he attempted to get away" from the officer is negated by Rolfe's dash cam. Plaintiffs' assertion that he "did not cause or threaten any serious physical injury against either officer while doing so nor did he attempt to gain control of either officer's gun." is likewise flatly contradicted by the dash cam video. He seizes Brosnan's Taser which

---

[3] The specific points in the various video are set forth in the Statement of Facts in Defendants original brief and are not repeated here.

under Georgia law is considered a firearm.  O.C.G.A. § 16-10-33.  He then put his foot on Brosnan and fired the weapon at his head.  He punched Officer Rolfe with a closed fist.  These are three felonious assaults.

Plaintiffs' assertion that "Brooks stopped resisting and with Brosnan's Taser in hand began running away from the officers" is contradicted by the video.  The video shows that he only disengaged with the officers once he punched Rolfe in the face and fired the Taser at Brosnan's head after slamming Brosnan's head against the concrete by falling on him.  He attempts to escape after committing numerous forcible felonies and then turns and fires a weapon at Rolfe at which point Rolfe was forced to use deadly force.  Plaintiffs' assertion that "neither officer ever commanded Brooks to drop [the Taser]" is again belied by the video.  He was told numerous times to let go of the Taser.

Finally, Plaintiffs' assertion that "Rolfe . . . forcibly kicked Mr. Brooks for no reason whatsoever" is likewise disproved by the video.  The action the Plaintiffs want to characterize as a "kick" was, in fact, Officer Rolfe moving to straddle Brooks to verify that he no longer presented a threat to the officers.

## II.    ARGUMENT AND CITATION OF AUTHORITY

Plaintiffs' responsive argument fundamentally ignores the actual holding of Tennessee v. Garner, the Georgia statute implementing the Supreme Court's holding,

and the facts as they actually occurred seen in the videos of the incident. The holding

of <u>Tennessee v. Garner</u> is as follows:

> [The Tennessee statute] is not, however, unconstitutional on its face. Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given. As applied in such circumstances, the Tennessee statute would pass constitutional muster.

<u>Tennessee v. Garner</u>, 471 U.S. 1, 11–12, 105 S. Ct. 1694, 1701 (1985).

> The Georgia statute following that holding reads in relevant part as follows:

> Sheriffs and peace officers who are appointed or employed in conformity with Chapter 8 of Title 35 **may use deadly force to apprehend a suspected felon only when the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury**; when the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; or **when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm**. . . .

O.C.G.A. § 17-4-20(b) (emphasis supplied).

> Pursuant to O.C.G.A. § 17-4-20(b), Officer Rolfe was authorized to shoot Brooks

(a suspected felon) the moment he realized that Brooks was in possession of a deadly

weapon or an object which when used offensively is likely to result in serious bodily

injury. But Officer Rolfe restrained his actions until the instant that Brooks pointed and

fired the weapon at him, which also justifies the use of deadly force pursuant to O.C.G.A. § 17-4-20(b), as well as the fact that Brooks committed a crime involving the infliction or threatened infliction of serious physical harm." It is also critical to note that the totality of the circumstances in the tense, rapidly developing situation was that Brooks went from perfectly compliant to violently and combatively resistant in 4 seconds, attacked both police officers, one with a weapon and one with a closed fist over the next 16 seconds, and while attempting to escape 10 seconds later, turned and fired a weapon at Defendant Officer Rolfe. There is less than a second between the discharge of the Taser and Rolfe's use of deadly force.

As noted in the original filing, this case presents precisely the circumstances that the Supreme Court in numerous qualified immunity cases has held should be decided based upon qualified immunity. The Court simply should not put law enforcement officers in a position where they face liability in light of Brooks' violent conduct in the struggle who then fires a stolen weapon and is still holding that weapon that Georgia law recognizes as a deadly weapon.

Plaintiffs assert that Brooks was not being arrested for a violent crime. Plaintiffs fail to address much less dispute that in the 48 seconds between the time Rolfe first put his hands on Brooks until he was shot, he committed no less than five (5) violent forcible felonies, including felony obstruction of a police officer, assault, aggravated assault,

battery, robbery and removal of a weapon from a police officer. At the instant he was shot, he was in the process of discharging a weapon at Officer Rolfe. Less than a year prior to these events, the Georgia Supreme Court had held that a "Taser" can be considered a deadly weapon for purposes of the offense of aggravated assault. Eberhart v. State, 307 Ga. 254, 835 S.E.2d 192 (2019). The Plaintiffs press this Court to consider Brooks' actions "at the instant" that deadly force was used. Forcible violent and injurious felonies against law enforcement officers and use of a weapon against his person are what Officer Rolfe knew at the instant he made the determination to use deadly force. The force was justified by clearly established law.

Plaintiffs next argue that "Brooks' initial physical resistance did not give rise to probable cause that he posed an imminent threat of serious harm." As is clearly seen from the video, Brooks had not merely resisted arrest. He stole a police weapon, discharged that weapon at the officer, and punched another officer with a closed fist. It doesn't get any more violent unless he had stabbed or shot one of the police officers.

Plaintiffs' citation of Salvato v. Miley, 790 F.3d 1286 (11th Cir. 2015) to clearly established law is unavailing. The decedent in Salvato was unarmed, the officer was uninjured and the decedent not pointing any weapon at the police officer. In this case, Brosnan's head was slammed into the concrete and a Taser fired directly at him. Rolfe

was punched in the head, and Brooks was in the act of firing a weapon at him when deadly force was used.[4]

Notwithstanding these distinctions between this matter and <u>Salvato</u> and <u>Gilmere</u>, it is entirely lost upon Plaintiffs that the language of <u>Garner</u> and O.C.G.A. § 17-4-20(b) authorize the use of deadly force to prevent the escape because Brooks was a suspected felon in possession of a deadly weapon or object which when used offensively is likely to result in serious bodily injury and he had, in fact, committed felonies "involving the infliction or threatened infliction of serious physical harm." This is identical to the language in <u>Garner</u> where the Supreme Court authorized deadly force "if the suspect threatens the officer with a weapon, where there is probable cause to believe **<u>he has committed</u>** a crime involving the infliction or threatened infliction of serious physical harm . . . ." (emphasis supplied). The Court need not reach qualified immunity because Rolfe's actions were reasonable as a matter of law under <u>Garner</u> and state law.

Plaintiffs next argue that Rolfe did not have probable cause to believe the Taser could cause him imminent serious physical injury or death. Georgia statutory law and

---

[4] Further, the case relied upon by <u>Salvato</u>, <u>Gilmere v. City of Atlanta</u>, 774 F.2d 1495 (11th Cir. 1985) to the extent that it is still good law is also distinguishable. In that case, the plaintiff's resistance was ineffectual because of his drunken condition and he had not threatened a police officer with a weapon. Further, he was not obviously armed as Brooks was in this case.

recent case authority was to the contrary. Further, given the language of <u>Garner</u> and O.C.G.A. § 17-4-20 set forth above, whether or not the Taser could cause immediate serious physical injury or death in the seconds after Brooks fired it at Rolfe is irrelevant.

The cases cited by the Plaintiffs in this section of their brief are distinguishable. Plaintiffs argue that the focus must be on the "level and immediacy of the threat," citing <u>Perez v. Suszczynski</u>, 809 F.3d 1213 (11th Cir. 1216). Plaintiffs also cite <u>Teel v. Lozada</u>, 826 Fed. Appx. 880 (11th Cir., 2020). In <u>Perez</u>, the person did not possess a weapon, and posed no threat to the officers. In <u>Teel</u>, the decedent was a woman holding a knife and threatening to kill <u>herself</u>. When the officer first encountered her, she was on the other side of a bed and another piece of furniture and was advancing slowly towards the officer asking him to shoot her. She posed no threat to the officer. The threat posed by Brooks as demonstrated by the video could not be more contrary. He had already attacked one officer with a weapon, punched another officer, was attempting to escape from those forceable felonies and then at the instant he was shot, discharged a weapon at the officer. The level of the threat that he had exhibited and continued to exhibit, in light of the language of <u>Garner</u> and 17-4-20(b), could not be more stark.

The next case cited by Plaintiffs, <u>Martinez v. City of Pembroke Pines</u>, 648 Fed. Appx. 888 (11th Cir. 2016) is actually in line with the facts of the instant case. In that case the decedent had already caused serious injury to an officer and was continuing to

attempt to cause injury by moving towards the officer swinging handcuffs attached to his hands. In this case, Brooks had attacked the officers and had a Taser that he discharged at the officer. Notwithstanding any claims about the holding and distinguishable facts of Cantu v. City of Dothan, the law as far as Officer Rolfe was concerned on June 12, 2020 was that the Georgia Supreme Court had held less than one year before that a Taser was a deadly weapon capable to serious physical injury. Given that Brooks had already attacked the officers and used a weapon against both of them, and was still clutching the weapon, Rolfe was not required to wait to see if the attack would continue especially when he had witnessed and experienced Brooks "commit a crime involving the infliction or threatened infliction of serious physical harm."

Next, Plaintiffs citing Cantu argue that the Taser is not capable of inflicting serious injury or death. First, Cantu was decided after the facts of this case and does not clearly establish the law. Second, it was factually distinguished in footnote 10 in the original brief. Finally, under Georgia statutory law the Taser is considered a firearm, and the Georgia Supreme Court had recently held that it was capable of producing serious injury or death.

Plaintiffs' effort to overcome this clear law is to rely on case of Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003). Vaughan involved an automobile chase and Plaintiffs appropriately note that a "vehicle is capable of being used as a deadly weapon." There

the similarities between <u>Vaughan</u> and this case end. Vaughan involved summary judgment and there was evidence that the vehicle in which the suspects were riding did not pose a threat to the officer, was driving only 10 miles over the speed limit, had made inadvertent contact with the rear of the police car when the officer slammed on the brakes, and did not swerve into the lane of the police car. The Court concluded that there was a factual dispute as to whether or not the vehicle actually posed a threat to the officer. Those are not the facts in this case where Brooks had attacked both officers and discharged a weapon at Rolfe at the moment he was shot. As with most of the other cases cited by Plaintiffs, the contrast could not be clearer.

Next, Plaintiffs argue that Rolfe could not reasonably believe that Brooks continued flight posed a danger to the general public because he was merely fleeing a DUI arrest. Plaintiffs cite <u>Salvato</u> in support of their argument. As noted above, the decedent in <u>Salvato</u> had not violently attacked the officers and injured them, was not holding a stolen weapon, much less discharging it at the officer at the moment he was shot. Brooks' conduct was precisely the reason that <u>Garner</u>, as well as the Georgia statute authorizes deadly force to prevent an escape in precisely the circumstances <u>created</u> by Brooks. He had stolen a police weapon, put his foot on the officer and fired it at the officer's head, punched the other officer and was discharging the weapon at the pursuing officer when he was shot. He presented precisely the kind of suspect that both

the Supreme Court and the Georgia's legislature authorize the use of deadly force to prevent from escaping and attacking someone else, turning on the pursuing officer, or doing the same or worse to the next law enforcement officer that encountered him.

Finally, the Plaintiffs argue that Rolfe did not provide any warning before using deadly force. Garner only requires warning "if feasible." Rolfe did not fire until, as can be seen in the video, Brooks turned to discharge the weapon in his hand at Rolfe. The audio reflects that there was less than a second between the sound of the Taser and Rolfe's firearm. Brooks created the circumstances, and it simply was not feasible to warn him not to fire a weapon at a police officer, especially after he had ignored multiple commands to release or drop the Taser. A warning was not legally required.

For the reasons set forth in Defendants' previous brief, not only were Rolfe's actions reasonable as a matter of law, there is simply no case that would put him on notice that deadly force was not authorized in the circumstances he faced in the parking lot that night. Garner specifically authorized deadly force if a fleeing, violent felon used a weapon against the officer. Garner specifically authorized deadly force to stop an escapee who had committed forcible felonies that could cause serious injury. The Georgia Supreme Court had held less than a year before that the Taser was a weapon capable of causing serious injury or death. Brooks went from compliant, almost complacent, to violently combative, and injurious in less than 20 seconds. As noted in

the previous brief, this situation is the very definition of a tense, rapidly evolving situation for which officers should be given the benefit of the doubt. <u>Cantu</u> decided after the facts of this case does not contain similar facts, and none of the cases relied upon by <u>Cantu</u> contain similar facts. Officer Rolfe was entitled to judgment as a matter of law on both prongs of the qualified immunity analysis.

Officer Rolfe is also entitled to judgment on the claim that he allegedly kicked Brooks. First, the video shows that Rolfe did not in fact kick Brooks. Conclusory assertions to the contrary cannot contradict the clear video. Second, contrary to all the cases relied upon by Plaintiffs, Brooks was not fully secure, and had not been handcuffed at the time of the alleged act, so Rolfe is entitled to qualified immunity.

### A. Officer Rolfe Is Entitled to Official Immunity Under State Law

Plaintiffs assert that the alleged commission of an intentional tort of battery and the alleged kick when he fell, preclude judgment on official immunity. Plaintiffs cite a number of cases, but fail to discuss the facts. None support depriving Officer Rolfe of official immunity in this case as argued in the original brief. First, <u>Merrow v. Hawkins</u>, 266 Ga. 390 (1996) and <u>Croland v. City of Atlanta</u>, 782 Fed. Appx. 753 (11th Cir. 2019), support Rolfe's entitlement to official immunity.

<u>DeKalb County v. Bailey</u>, 319 Ga. App. 278 (2012), is distinguishable for at least the following reasons: the defendant officer was never threatened with a weapon, did

not have probable cause to believe that the fleeing individual committed a crime involving serious physical harm, never saw a weapon, the decedent had never turned toward him while running away, and had never discharged a weapon at the officer. The situation faced by Officer Rolfe was different in every way.

In <u>Gardner v. Rogers</u>, 224 Ga. App. 165 (1996), the officer completed his questioning but refused to let plaintiff close the door, grabbed her in a chokehold, beat her, almost broke her arm, slammed her head onto the police car as he placed her in the vehicle, and then conspired with the lieutenant to charge her with anything he could think of. Those facts bear no resemblance to the situation faced by Officer Rolfe in the Wendy's parking lot that night. In <u>Porter v. Massarelli</u>, 303 Ga. App. 91 (2010), official immunity on summary judgment was denied because of factual questions as to whether or not the officer fired before or after the car began to move. In this case, Rolfe fired his weapon only after multiple forcible felonies against himself and a fellow officer, and at the instant Brooks was discharging a weapon at him. <u>Hammond v. Gordon</u>, 316 F.Supp.2d 1262 (N.D. Ga. 2002), involved a sexual assault by a jailer, including penetration of the plaintiff with his fingers – clearly not the facts here.

In <u>Bateast v. DeKalb County</u>, 258 Ga. App. 131 (2002), there was a fact issue. The plaintiff was arrested for providing false identification. She, however, provided two forms of identification and when she got into the police car, the screen showed the

officers had properly identified her.  When she inquired, they turned off the screen and took her to jail.  In other words, the officers knew there was no crime but arrested her anyway.  Rolfe had witnessed multiple forcible felonies by Brooks and he was in the process of firing a weapon at Rolfe when Rolfe determined to use deadly force.

In Dyksma v. Pierson, 763 Fed. Appx. 909 (11th Cir. 2019), aff'g 2018 WL 3430684 (M.D. Ga. 2018), official immunity was denied for a claim that the deputy had placed his knee on the decedent's back for 17 seconds after he was handcuffed, non-resistant, and likely non-responsive.  In short, even a cursory review of the cases cited by Plaintiffs, presumably the best they could offer, show them distinguishable in every regard from the facts shown by the videos in this case.

As noted in the previous filing, a kick does not overcome official immunity under the circumstances presented on the scene that night, even presuming the kick occurred. Furthermore, Plaintiffs fail to address the fact that Rolfe was personally rendering aid to Brooks within minutes and continued to do so with a few brief breaks after asking others to do so until the ambulance arrived.  Nothing in the videos are suggestive of actual malice as that standard is articulated by Georgia's courts.  Therefore, Officer Rolfe is entitled to judgment as a matter of law on Plaintiffs' state law claims.

(Continued on following page)

Respectfully submitted, this 28th day of January, 2022.

CAROTHERS & MITCHELL, LLC

*/s/ Thomas M. Mitchell*

_____
THOMAS M. MITCHELL
Georgia Bar No. 513597
Attorneys for Defendant Garrett Rolfe

1809 Buford Highway
Buford, GA 30518
T: (770) 932-3552
F: (770) 932-6348 Fax
Email: thomas.mitchell@carmitch.com

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TOMIKA MILLER and the ESTATE OF     :
RAYSHARD BROOKS, by and through     :
Tomika Miller, Administrator,       :   CIVIL ACTION
                                    :
        Plaintiffs,                 :   FILE NO. 1:21-CV-03752-SDG
                                    :
v.                                  :
                                    :
THE CITY OF ATLANTA, GEORGIA;       :
GARRETT ROLFE, in his individual    :
capacity; DEVIN BROSNAN, in his     :
individual capacity,                :
                                    :
        Defendants.                 :

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing

**REPLY BRIEF OF DEFENDANT GARRETT ROLFE IN SUPPORT OF**

**MOTION TO DISMISS** to the Clerk of Court using the CM/ECF system which will

automatically send electronic mail notification of such filing to counsel of record who

are CM/ECF participants.  Counsel of record are:

L. Chris Stewart, Esq.
Dianna J. Lee, Esq.
Stewart Miller Simmons Trial Attorneys
55 Ivan Allen Jr. Blvd., Suite 700
Atlanta, GA 30308
cstewart@smstrial.com
dlee@smstrial.com

G. Brian Spears, Esq.
Jeff Filipovits, Esq.
Spears & Filipovits, LLC
1126 Ponce de Leon Avenue
Atlanta, GA 30306
bspears@civil-rights.law
jeff@civil-rights.law

I further certify pursuant to L.R. 7.1D that the above-titled document complies with L.R. 5.1B and was prepared using a 14-point Times New Roman font.

This 28th day of January, 2022.

CAROTHERS & MITCHELL, LLC

/s/ Thomas M. Mitchell
_____
THOMAS M. MITCHELL
Georgia Bar No. 513597
Attorneys for Defendant Garrett Rolfe

1809 Buford Highway
Buford, GA  30518
T: (770) 932-3552