**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TOMIKA MILLER and the ESTATE OF
RAYSHARD BROOKS *by and through Tomika
Miller, Administrator*,

     Plaintiffs,

             v.

THE CITY OF ATLANTA, GEORGIA; and
GARRETT ROLFE, *in his individual capacity*,

     Defendants.

Civil Action No.
1:21-cv-03752-SDG

## OPINION AND ORDER

This matter is before the Court on the following motions: Defendant City of

Atlanta's (the City) motion to dismiss the original complaint [ECF 14], request to

withdraw that motion [ECF 28], motion to dismiss the First Amended Complaint

(FAC) [ECF 34], and motion for leave to respond to Plaintiffs' notice of

supplemental authority [ECF 54]; Defendant Garrett Rolfe's motion to dismiss

[ECF 31] and motion to respond to Plaintiffs' supplemental authority [ECF 53];

and Plaintiffs' motion to exclude extrinsic evidence supporting Rolfe's motion to

dismiss [ECF 40]. For the following reasons, the City's motion to withdraw its

motion to dismiss the original complaint [ECF 28] is **GRANTED** and the motion

to dismiss the original complaint [ECF 14] is **DENIED as moot**. The City's motion

to dismiss the FAC [ECF 34] is **DENIED**. Defendants' motions to respond to

Plaintiffs' supplemental authority [ECF 53; ECF 54] are **GRANTED**. Rolfe's motion to dismiss [ECF 31] is **GRANTED in part** and **DENIED in part**. Plaintiffs' motion to exclude extrinsic evidence [ECF 40] is **GRANTED in part** and **DENIED in part**.

## I.    Background

### A.    Factual Allegations

For purposes of Defendants' motions to dismiss, the Court treats all well-pleaded facts in the FAC as true and construes them in the light most favorable to Plaintiffs. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999).

On the evening of June 12, 2020, Rayshard Brooks drove his car to the drive-thru lane of a Wendy's fast-food restaurant on University Avenue in Atlanta, Georgia.[1] While waiting in the drive-thru line in his car, Brooks fell asleep.[2] A Wendy's employee reported this to the police.[3] Officer Devin Brosnan of the Atlanta Police Department (APD) was dispatched in response.[4]

---

[1]    ECF 26, ¶ 9.

[2]    *Id.* ¶ 10.

[3]    *Id.* ¶ 11.

[4]    *Id.* ¶¶ 7, 12.

When Brosnan arrived at the Wendy's, he saw Brooks asleep in his car in the drive-thru.[5] Brosnan approached the car, woke Brooks, and began to question him.[6] Brosnan directed Brooks to move his car to a nearby parking spot in the restaurant's parking lot.[7] Brooks complied.[8] Brooks opened the driver's side door, but remained in the car and Brosnan continued questioning him.[9] During that exchange, Officer Garrett Rolfe (also of the APD) arrived.[10] Brosnan and Rolfe conferred briefly, away from where Brooks had parked.[11] Brooks remained in the car.[12] Rolfe then began to question Brooks.[13] Eventually, Rolfe asked Brooks to exit the car and whether he would consent to a search.[14] Brooks agreed to the search and exited the car.[15] Rolfe did not find any weapons.[16] Rolfe also administered

5    *Id.* ¶ 13.

6    *Id.* ¶¶ 14–15.

7    *Id.* ¶ 16.

8    *Id.* ¶ 17.

9    *Id.* ¶¶ 18–19.

10    *Id.* ¶¶ 6, 19.

11    *Id.* ¶ 21.

12    *Id.*

13    *Id.* ¶ 22.

14    *Id.* ¶¶ 22–24.

15    *Id.* ¶ 24.

16    *Id.* ¶ 26.

several field sobriety tests and a breath test on Brooks.[17] Shortly after conducting the breath test, Rolfe started to arrest Brooks and place him in handcuffs.[18] At that point, what had been a calm and uncontentious encounter markedly changed.

As Rolfe was attempting to handcuff Brooks, Brooks pulled away.[19] Rolfe and Brosnan tackled him.[20] Brosnan pulled his APD-issued TASER and discharged it into Brooks's leg, using "drive stun" mode.[21] Brooks grabbed the TASER and a struggle broke out, during which Brooks took control of the TASER.[22] The weapon was discharged, although the pleading does not indicate by whom.[23] Brooks then started to run away.[24] Rolfe responded by drawing his own TASER and firing it at Brooks twice.[25] The shots were not effective.[26] Rolfe gave chase.[27]

---

[17]  *Id.* ¶¶ 28, 30–31.

[18]  *Id.* ¶ 33.

[19]  *Id.* ¶ 36.

[20]  *Id.* ¶ 37.

[21]  *Id.* ¶¶ 39–40.

[22]  *Id.* ¶¶ 40, 43, 45.

[23]  *Id.* ¶¶ 36–40, 43, 45–46.

[24]  *Id.* ¶ 48.

[25]  *Id.* ¶ 49.

[26]  *Id.*

[27]  *Id.* ¶¶ 48–50.

Brooks began to increase the distance between himself and Rolfe.[28] Brooks turned and fired the TASER he had taken from Brosnan.[29] The FAC alleges that Rolfe knew he was outside the TASER's range when Brooks fired it.[30] Rolfe then pulled his gun and fired three shots at Brooks's back without warning.[31] One shot hit an occupied vehicle in the Wendy's parking lot.[32] Two of the shots hit Brooks in the back and Brooks collapsed.[33]

While Brooks was lying on the ground, Rolfe and Brosnan went and stood over him.[34] Brooks was alive but suffering from gunshot wounds in his upper torso that required immediate medical attention.[35] Neither officer immediately attempted to provide any such assistance.[36] Instead, the FAC alleges that Brosnan

---

[28]   *Id.* ¶ 51.

[29]   *Id.* ¶ 56.

[30]   *Id.* ¶ 58.

[31]   *Id.* ¶¶ 51–58, 60, 69.

[32]   *Id.* ¶ 71.

[33]   *Id.* ¶¶ 71–72.

[34]   *Id.* ¶ 73.

[35]   *Id.* ¶¶ 73–74, 76.

[36]   *Id.* ¶ 77.

put a foot on Brooks's shoulder and Rolfe kicked him.[37] Brooks was transported to the hospital where he died following surgery.[38]

### B.   Procedural History

On September 10, 2021, Tomika Miller, Brooks's widow, filed suit against Rolfe, Brosnan, and the City on behalf of herself and in her capacity as the administrator of Brooks's estate.[39] On October 22, the City moved to dismiss the initial complaint.[40] In response, on November 12, Plaintiffs filed the FAC.[41] The City accordingly sought to withdraw its first motion to dismiss.[42]

The FAC asserts four causes of action. Counts I and II, asserted only against Rolfe, are both for excessive force under Section 1983 and battery under O.C.G.A. § 51-1-13.[43] Count III is asserted against Rolfe and is for deliberate indifference under Section 1983.[44] Count IV is brought against the City for municipal liability

---

[37]   *Id.* ¶¶ 77–80.

[38]   *Id.* ¶ 81.

[39]   *See generally* ECF 1.

[40]   ECF 14.

[41]   ECF 26.

[42]   ECF 28. Because the FAC supersedes the original complaint, the City's motion to withdraw its original motion to dismiss [ECF 28] is **GRANTED**, and the motion to dismiss the original complaint [ECF 14] is **DENIED AS MOOT**.

[43]   ECF 26, ¶¶ 184–94.

[44]   *Id.* ¶¶ 195–201.

under Section 1983.[45] Plaintiffs seek compensatory, punitive, special, and nominal

damages, as well as attorneys' fees.[46]

On November 29, 2021, Rolfe and then-Defendant Brosnan moved to

dismiss the FAC.[47] On December 10, the City did likewise.[48] Plaintiffs filed their

opposition briefs in response to both motions to dismiss on January 14, 2022.[49]

Plaintiffs also moved to exclude extrinsic evidence filed in support of the

individual Defendants' motion and filed a consent motion to dismiss Brosnan

from this action with prejudice.[50] On January 28, 2022, the Court granted the

consent motion and dismissed the claims against Brosnan.[51] The parties have fully

briefed these motions as well as filed notices of supplemental authority.[52]

---

[45]   *Id.* ¶¶ 202–08.

[46]   *Id.* at 43–44.

[47]   ECF 31.

[48]   ECF 34.

[49]   ECFs 38-39.

[50]   ECFs 37, 40.

[51]   ECF 41.

[52]   ECFs 43-44, 46-48, 51-55.

## II.     Motions Concerning Supplemental Authority and Extrinsic Evidence

Because they implicate what the Court should consider in deciding whether Plaintiffs' claims are viable, the Court first addresses the parties' motions concerning supplemental authority and extrinsic evidence.

### A.     Supplemental Authority

Plaintiffs' first notice of supplemental authority identifies two cases from this district that were decided after the parties had completed briefing on Defendants' motions to dismiss: *English v. City of Gainesville*, 2:20-cv-147-RWS, which discusses qualified immunity, and *Pilgrim/Young v. City of Atlanta*, 1:21-cv-02472-TWT, which addresses *Monell* claims.[53] Rolfe seeks leave to file a response to *English* in order to distinguish it from the instant case.[54] Similarly, the City asks permission to file a response about *Pilgrim/Young* to demonstrate why that case is purportedly not applicable here.[55] Plaintiffs did not oppose either motion. The Court therefore grants Defendants' leave to file their responses to Plaintiffs' supplemental authorities, and the Court has considered them in reaching its conclusions here.

---

[53]   ECF 51.

[54]   ECF 53.

[55]   ECF 54.

## B.   Extrinsic Evidence

Rolfe's motion to dismiss relies on a litany of evidence—including video and audio recordings—that was not attached to or directly referenced in the FAC.[56] Rolfe did not file these materials with the Court when he moved to dismiss. Rather, his motion embedded links to the evidence.[57] Plaintiffs argue that consideration of such extrinsic evidence at the motion to dismiss stage is improper and seek to exclude it.[58]

Although Plaintiffs put forward several arguments about why the Court should disregard Rolfe's evidence, the Court only finds it necessary to address one—the assertion that none of the materials have been authenticated.[59] Rolfe has filed a "verification" purporting to authenticate certain of the evidence,[60] and contends that authentication is not required when the contents are not in dispute.[61]

---

[56]   ECF 31, at 1–3.

[57]   *Id.* After Plaintiffs objected that the evidence was not in the record, Rolfe filed copies of it with the Court. ECF 42.

[58]   ECF 40.

[59]   *Id.* at 8–9.

[60]   ECF 42, at 3–4.

[61]   ECF 44, at 11–12. *See also id.* at 5 (referring to the videos as "undisputed" and arguing that there is no dispute as to authenticity), 11 (stating that there "is no dispute as to the contents of the video[s]").

Plaintiffs object to the authenticity of all of the evidence on which Rolfe's motion to dismiss relies.[62] Their reply brief addresses Rolfe's characterization of "authenticity" in this context and his assertion that the evidence is "undisputed."[63] Rolfe objects to much of that portion of Plaintiffs' reply, contending that it contains new arguments.[64]

As a general rule, on a motion to dismiss if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (same). However, such extrinsic evidence may be considered without converting the motion to one for summary judgment "if it is central to the plaintiff's claim *and the authenticity of the [evidence] is not challenged*." *Adamson v. de Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (emphasis added) (citations omitted). *See also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (same). As Plaintiffs point out, the purpose of this requirement is to prevent "the circumvention of the Rule 56 notice and

---

[62]   *See, e.g.*, ECF 40, at 8–9.

[63]   ECF 47, at 2–7.

[64]   ECF 48, at 2.

opportunity to be heard provisions when extraneous materials are considered."
*Id.*[65]

Many of Plaintiffs' concerns about authenticity are valid. There are three broad categories of evidence on which Rolfe attempts to rely: (1) audio and video recordings (including police body and dash cam recordings) and other materials made by law enforcement;[66] (2) video recordings from the restaurant;[67] and (3) videos purportedly made by witnesses to the events.[68] Rolfe has not attempted to authenticate the evidence falling under categories 2 and 3. While his effort to authenticate the materials in category 1 is far from perfect, Plaintiffs have not sufficiently called into question their authenticity either.[69]

### 1.    Authentication

Rolfe argued in his opposition brief that Plaintiffs did not supply any authority for their contention that his evidence must be authenticated consistent with the Federal Rules of Evidence.[70] When Plaintiffs replied to that argument by

---

[65]   ECF 40, at 8 (citing *Horsley*).

[66]   ECF 31, at 2–3 ¶¶ 3–6, 12–13, 15–18.

[67]   *Id.* at 2 ¶¶ 7–8.

[68]   *Id.* at 2–3 ¶¶ 9–11, 14.

[69]   ECF 42, at 3–4.

[70]   ECF 44, at 11.

supplying *more* case law supporting the points raised in their opening brief,[71] Rolfe objected that they were making new arguments.[72] This is disingenuous at best.

The law is clear that "a court should not consider arguments raised for the first time in a reply brief." *Reliance Ins. Co. of Ill. v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000). But that isn't what Plaintiffs here have done. It is hard to see how a reply brief that responds directly to an argument made in an opposition brief improperly raises a "new" argument. Plaintiffs did not raise new arguments in their reply by citing Rule 901 and related case law to show that the authenticity of the extrinsic evidence is in dispute.

The Court declines Rolfe's invitation to disregard the authorities and arguments in Plaintiffs' reply brief. But even if the Court were to disregard Plaintiffs' arguments, it would still reject Rolfe's contention that the authenticity required at this stage need not comply with Rule 901. *Hi-Tech Pharm.*, 910 F.3d at 1189.

The controlling case law makes clear that a court should not consider in support of a motion to dismiss materials of which the authenticity is in dispute. *Horsley*, 304 F.3d at 1134. *See also Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d

---

[71]   ECF 47, at 2–7.

[72]   ECF 48, at 2.

1186, 1189 (11th Cir. 2018) ("[W]e may also consider documents . . . of **undisputed authenticity**.") (emphasis added). Rolfe insists that authenticity does **not** require compliance with Fed. R. Evid. 901.[73]

The Court disagrees. A challenge to authenticity in this context must be a contention from the challenging party that the proponent of the extrinsic evidence has failed to comply with Rule 901. *Cf. Robinson v. Sauls*, No. 21-11280, --- F.4th ---, 2022 WL 3754543, at *4 n.3 (11th Cir. Aug. 30, 2022) (concluding the district court did not err in refusing to consider on summary judgment photographs that (among other things) had not been authenticated consistent with Rule 901, and declining to consider them on appeal). Rolfe provides no authority to support his argument that the Court should disregard the common and clear meaning of authentication supplied by that rule, which applies in all civil proceedings before this Court. Fed. R. Evid. 1101.

Nor do the cases Rolfe does cite show that it is appropriate for the Court to rely on video footage in support of a motion to dismiss when its authenticity is legitimately in dispute. *Cantrell v. McClure*, 805 F. App'x 817, 819 n.2, 820 (11th Cir. 2020) (finding no error in the trial court's consideration of "undisputedly authentic

---

[73]   ECF 44, at 11–12.

footage" on motion to dismiss); *McDowell v. Gonzales*, 424 F. Supp. 3d 1214, 1223 (S.D. Fla. 2019), *aff'd*, 820 F. App'x 989, 992 (11th Cir. 2020) (per curiam) (noting that the district court's consideration of the video was proper because it "was central to the amended complaint and *was undisputed*") (emphasis added) (citing *Horsley*, 304 F.3d at 1134).

Rolfe nevertheless argues that the Court should consider his evidence because Plaintiffs have not identified "some serious issue as to its authenticity or accuracy," but he has not explained what steps he believes Plaintiffs have failed to take to make such challenges.[74] The Court will decline to consider extrinsic evidence in support of Rolfe's motion to dismiss when Plaintiffs have raised legitimate disputes about its authenticity under Rule 901(a).

### 2. The authenticity of the witness and restaurant videos is legitimately in dispute at this stage.

Rule 901(a) states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rolfe has made no effort to do this with regard to the Wendy's videos and the witness videos. Plaintiffs' objection to these materials is therefore well-taken.

---

[74]   *Id.* at 12.

Rolfe describes the videos from Wendy's as being "enhanced" and "slowed down side by side."[75] He provides no argument about why the Court may appropriately consider at this stage evidence that has consciously been altered, particularly when the only indication that the videos are what Rolfe purports them to be is argument by his counsel. Similarly, there is nothing in the record to authenticate the videos purportedly filmed by witnesses to the events.

Plaintiffs have raised well-founded objections to the Court's consideration of this evidence.[76] As they argue:

> [Rolfe] presented no certifications from any records custodians, no affidavits from the officers or any of the civilian witnesses who personally observed the events depicted in the videos, no information regarding chain of custody or the extent of alterations, or any other evidence to support a finding of authenticity, much less identifying the persons depicted in the videos.[77]

It was Rolfe's burden to authenticate the videos that he is asking the Court to consider at this stage, and he failed to do so. Because there is a legitimate dispute as to the authenticity of these videos, the Court will not consider them. *Mullinax v.*

---

[75]   ECF 31, at 2 ¶¶ 7–8.

[76]   ECF 47, at 2–6.

[77]   *Id.* at 7.

*United Marketing Group, LLC*, Civ. A. No. 1:10-cv-3585-JEC, 2011 WL 4085933, at *7 (N.D. Ga. Sept. 13, 2011).

### 3. The authenticity of materials made by law enforcement is not legitimately in dispute.

To support his contention that the audio and video recordings and other materials made by law enforcement should be considered by the Court, Rolfe belatedly filed a verification made by APD Lt. Scott Jimenez, a representative of the City and the APD.[78] Jimenez attests that this evidence is "true and correct copies of materials created and maintained in the course and scope of the operations" of the APD.[79] He also attests that these materials "accurately depict the events as reflected therein."[80]

Plaintiffs argue that there is nothing in the verification that supports either assertion.[81] But Plaintiffs do not otherwise contend that the law enforcement materials fail to accurately depict the events they recorded or that this evidence has been altered in any fashion. Accordingly, Plaintiffs have failed to raise a legitimate challenge to the authenticity of this evidence and the Court exercises its

---

[78]  ECF 42, at 3–4.

[79]  *Id.*

[80]  *Id.* at 4.

[81]  ECF 47, at 5–6.

discretion to consider these materials in support of Rolfe's motion to dismiss. *Cantrell*, 805 F. App'x at 819 n.2.

### III.   The Motions to Dismiss

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must [ ] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is satisfied when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009).

### A.   Rolfe's Motion

Rolfe argues that he is entitled to qualified immunity on Plaintiffs' excessive force and deliberate indifference claims, and to official immunity as to the state-law claims. It is worth noting that, in seeking dismissal, Rolfe relies on a radically different description of the relevant events than what is detailed in the FAC.[82] This

---

[82]   ECF 31-1, at 1-2.

description relies on the disputed extrinsic evidence. Nearly the entire statement of facts in Rolfe's motion to dismiss relies on such evidence rather than the well-pleaded allegations of the operative complaint.[83] The Court has already determined that it is not appropriate to consider the witness and restaurant videos in support of Rolfe's motion to dismiss. But having reviewed the law enforcement materials and construing any ambiguities therein in Plaintiffs' favor, the Court concludes that this evidence is not inconsistent with the allegations in the FAC. Accordingly, the Court accepts the well-pleaded allegations as true and construes them in the light most favorable to Plaintiffs. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

### 1.    Use of excessive force (Counts I & II)

Section 1983 does not itself create any substantive rights. *Baker v. McCollan*, 443 U.S. 137, 140, 144 n.3 (1979). Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Id*. Here, Plaintiffs' Section 1983 claims in

---

[83]    *Id.* at 3–9.

Counts I and II are based on the alleged use of excessive force in violation of Brooks's Fourth Amendment rights.

Rolfe makes several arguments in favor of the dismissal of these claims. First, he contends that his actions were reasonable as a matter of law.[84] He next argues that he is entitled to qualified immunity because he did not violate Brooks's clearly established constitutional rights.[85]

### i.    Reasonableness

Excessive force claims under the Fourth Amendment are subject to an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). That reasonableness is determined from the perspective of a reasonable officer on the scene. *Id.* at 396. However, it is not "capable of precise definition or mechanical application," and its analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citations omitted). In assessing reasonableness, it is also appropriate to take account of the fact that "police officers are often forced to make split-second

---

[84]    *Id.* at 11–14.

[85]    *Id.* at 14–17.

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

As the FAC alleges, at the time Rolfe shot Brooks, Brooks was armed with a TASER and fleeing arrest.[86] That TASER had already been discharged once.[87] When Brooks discharged the TASER a second time, Plaintiffs assert that Rolfe knew he was well outside of its possible range.[88] Further, at that point, Rolfe allegedly knew the TASER could only be used in "drive stun" mode—that is, by pressing it directly against someone's skin.[89] Plaintiffs thus contend that Brooks did not pose a threat to Rolfe or anyone else during his flight.[90] Despite this, Rolfe shot Brooks in the back while Brooks was running away.[91] Then, while Brooks was laying on the ground, Rolfe purportedly kicked Brooks solely for the purpose of causing Brooks more pain.[92] These allegations, accepted as true at this pleading stage, are sufficient to survive dismissal on reasonableness grounds. *See, e.g., Perez*

---

[86]   ECF 26, ¶¶ 36, 45, 48, 60.

[87]   *Id.* ¶¶ 44–46.

[88]   *Id.* ¶¶ 56–58, 65–68.

[89]   *Id.* ¶ 66.

[90]   *Id.* ¶¶ 53, 55, 62–68.

[91]   *Id.* ¶¶ 60–64, 69–71.

[92]   *Id.* ¶¶ 192–94.

*v. Suszczynski*, 809 F.3d 1213, 1220 (11th Cir. 2016) ("[T]the mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit. Where the weapon was, what type of weapon it was, and what was happening with the weapon are all inquiries crucial to the reasonableness determination.").

Rolfe argues that it was objectively reasonable for him to respond with deadly force to Brooks's flight with the TASER.[93] In pressing this point Rolfe focuses on the litany of alleged offenses Brooks committed during his brief encounter with the officers, asserting that Brooks was "an immediate threat" to Rolfe and possibly others.[94] But this contention directly contradicts the plausible allegations in the FAC that Brooks did not pose a threat to anyone at the point when Rolfe shot him in the back.[95] While a TASER is generally capable of causing serious injury, *Eberhart v. Georgia*, 307 Ga. 254, 261–62 (2019), Plaintiffs allege that the weapon posed no such risk here under the specific factual circumstances and that Rolfe *knew* the weapon was not a threat. The Court is not at liberty to disregard those well-pleaded allegations at this stage.

---

[93]   ECF 31-1, at 12–13.

[94]   *Id.* at 13.

[95]   ECF 26, ¶¶ 53–68.

As for his alleged post-shooting conduct, Rolfe disputes the assertion that he kicked Brooks in the first place, relying on an altered video from Wendy's and an unauthenticated bystander recording.[96] As discussed above, the Court will not consider this extrinsic evidence at this stage. The effort Rolfe's brief expends to try to interpret what is depicted in these videos demonstrates why it is inappropriate for the Court to consider them on a motion to dismiss in the first place.

Moreover, none of the cases relied on by Rolfe concluded at the motion to dismiss stage that the officer's conduct was objectively reasonable.[97] And with good reason. Determining objective reasonableness requires considering all of the relevant facts and circumstances. *Graham*, 490 U.S. at 396. It is a fact-intensive inquiry not well-suited to a conclusion as a matter of law at the pleading stage. In fact, it is only at the summary judgment stage when the Court must "determine[ ] the relevant set of facts and draw[ ] all inferences in favor of the nonmoving ***party to the extent supportable by the record***," that the reasonableness of an officer's

---

[96]   ECF 31-1, at 18–19.

[97]   *Id.* at 11–14 (citing *Scott*, 550 U.S. 372 (decided at summary judgment); *Graham*, 490 U.S. 386 (directed verdict); *Tennessee v. Garner*, 471 U.S. 1 (1985) (after bench trial); *Hunter v. City of Leeds*, 941 F.3d 1265 (11th Cir. 2019) (summary judgment); *Penley v. Eslinger*, 605 F.3d 843 (11th Cir. 2010) (summary judgment); *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234 (11th Cir. 2003) (summary judgment)).

actions becomes a "pure question of law." *Penley v. Eslinger*, 605 F.3d 843, 848–49 (11th Cir. 2010) (emphasis in original) (quoting *Scott v Harris,* 550 U.S. 372, 381 n.8 (2007)).

The Court cannot conclude at this preliminary stage that Rolfe's actions were objectively reasonable. Reasonableness depends on case-by-case assessment of all the relevant facts and circumstances. The Eleventh Circuit has adopted the Supreme Court's description of this process as a "slosh . . . through [a] factbound morass." *Penley*, 605 F.3d at 850 (citing *Scott*, 550 U.S. at 383). *See also Hunter v. City of Leeds*, 941 F.3d 1265, 1279 (11th Cir. 2019) ("Reasonableness is a fact-specific inquiry . . . ."). The FAC plausibly alleges facts sufficient to show that Rolfe's conduct was not objectively reasonable. On a dispositive motion after discovery and with a complete record, the Court may conclude otherwise as a matter of law. But the Court declines to do so now at this preliminary pleading stage.

### ii.   Qualified immunity

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Eleventh Circuit has made clear that the

"pursuit and apprehension of suspected criminals is a core discretionary function of the police." *Hunter*, 941 F.3d at 1278 n.16 (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1289–90 (11th Cir. 2009) (per curiam)). Nor do the parties appear to dispute that Rolfe was acting within his discretionary authority.[98] Thus, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

There is no qualified immunity (1) if there was a constitutional violation and (2) that violation was of a clearly established right. *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Id*. (*quoting Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

### *a.* **Constitutional violation**

Plaintiffs allege that Rolfe violated Brooks's Fourth Amendment rights. In *Tennessee v. Garner*, the Supreme Court set out the standard for the reasonable use of deadly force. Critically, the Supreme Court made clear that:

---

[98]   *See generally* ECF 13-1, at 14–17, 19–20.

> [t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. Where the suspect poses *no immediate threat to the officer and no threat to others*, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . . A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

471 U.S. 1, at 11 (1985) (emphasis added).

At bottom, "to determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). "Using deadly force in a situation that clearly would not justify its use is unreasonable under the Fourth Amendment." *Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005). As the Eleventh Circuit recently noted, "by at least 2013 it was readily apparent that using deadly force on a suspect who had been but was no longer a threat was unconstitutionally excessive." *Robinson*, 2022 WL 3754543, at *10 (11th Cir. Aug. 30, 2022).

It therefore follows that if Brooks posed no immediate threat to the officers or anyone else then Rolfe's use of deadly force violated Brooks's constitutional rights. This is exactly what the FAC alleges.[99] According to the FAC, at the time

---

[99]   *See, e.g.*, ECF 26, ¶¶ 184–90.

Rolfe fired on Brooks, Brooks was far enough away from the officers and bystanders that he posed no threat to anyone because the TASER could only be used by pressing it directly against a person and Brooks was not near anyone.[100] Rolfe does not seem to seriously contest that Plaintiffs have adequately alleged a violation of Brooks's constitutional rights. Rolfe instead focuses his efforts on arguing that any such right was not clearly established.

### b.    Clearly established right

For the second prong of the qualified immunity analysis the Court "must determine whether the right was clearly established such that a reasonable official would understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citing *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006)). Cases from the United States Supreme Court, Eleventh Circuit, and Georgia Supreme Court establish whether the law, at the time of the violation, provided "fair and clear warning" to a reasonable officer that his or her actions were unconstitutional. *Id.* "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Id.* at 1013 (citing *Vinyard*, 311 F.3d at 1350). Courts should not,

---

[100] *Id.* ¶¶ 51–68.

however, "define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (citation omitted). "What matters is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019) (citing *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003)).

Here, Rolfe argues that there is no clearly established law that the use of deadly force to subdue a "violent fleeing suspect [who] turns and discharges a weapon" in the officer's direction violates the Constitution.[101] But this argument is flawed for two reasons. First, it relies on Rolfe's version of the facts, which the Court is not at liberty to accept at this stage of the proceedings. The FAC plausibly alleges that Brooks was not an immediate threat to anyone at the point Rolfe fired his weapon and that Rolfe *knew* Brooks was not a threat.[102]

Second, an *exact* identity of facts is not required to show that a right was clearly established. "[A] case directly on point is not required as long as 'existing precedent' placed the 'constitutional question beyond debate.'" *Martinez v. City of Pembroke Pines*, 648 F. App'x 888, 894 (11th Cir. 2016) (quoting *Taylor v. Barkes,* 575 U.S. 822, 825 (2015)). By at least 2013, it was beyond debate that the use of deadly

---

101  ECF 31-1, at 16.

102  ECF 26, ¶¶ 53–70.

force on a suspect who had been but was no longer a threat was unconstitutional. *Robinson*, 2022 WL 3754543, at *10. Here, Rolfe was on notice at the time of the shooting that the use of deadly force has constitutional limits, and that his use of deadly force would be justified only if a reasonable officer in his position would believe that Brooks posed an immediate threat of serious physical harm. *Perez*, 809 F.3d at 1222 (emphasis added). *See also English v. City of Gainesville*, Civ. A. No. 2:20-cv-147-RWS, 2022 WL 2433384, at *7 (N.D. Ga. Mar. 2, 2022) (same).

The facts about whether Brooks continued to pose a threat at the time Rolfe shot him are in dispute. Because Plaintiffs have plausibly alleged that Brooks was not a threat at that moment, the parties and the Court are bound to accept those allegations as true. *Cf. Salvato v. Miley*, 790 F.3d 1286, 1293–94 (11th Cir. 2015) (upholding refusal to grant summary judgment on qualified immunity grounds where suspect had resisted arrest and struck officers multiple times, but was not an immediate threat, was retreating, and was outside of striking distance at the time he was shot). Again, following discovery and on a complete record, it may be that Plaintiffs will fail to show that Brooks was not an immediate threat, or the undisputed facts will demonstrate that Rolfe did not violate a clearly established constitutional right. At this stage, however, Plaintiffs have met their pleading burden.

### 2. Deliberate indifference claim (Count III)

Plaintiffs have expressly abandoned this claim.[103] Accordingly, to the extent Rolfe seeks dismissal of Count III, his motion is granted.

### 3. State-law claims for battery (Counts I & II)

Count I asserts a claim for battery under Georgia law (O.C.G.A. § 51-1-13) based on Rolfe's fatal shooting of Brooks.[104] The battery claim in Count II is based on Rolfe allegedly kicking Brooks while he was laying on the ground after being shot.[105] Rolfe asserts he is entitled to official immunity on these causes of action.[106]

### i. Official immunity

Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption." *Murphy v. Bajjani,* 282 Ga. 197, 198 (2007). Such agents can be sued "if they (1) negligently perform a ministerial duty, or (2) act with actual malice or actual intent to cause injury while performing a discretionary function." *Daniels v. Gordon,* 232 Ga. App. 811, 813 (1998) (citing *Teston v. Collins,* 217 Ga. App. 829, 830 (1995)); *see also Chisolm v. Tippens,* 289

---

[103]   ECF 39, at 2.

[104]   ECF 26, ¶¶ 184–90.

[105]   *Id.* ¶¶ 191–94.

[106]   ECF 31-1, at 23–25.

Ga. App. 757, 760 (2008) (citing *Nichols v. Prather,* 286 Ga. App. 889, 896 (2007)). This requires an analysis of the officer's subjective intent. *Croland v. City of Atlanta*, 782 F. App'x 753, 758–59 (11th Cir. 2019) (per curiam) (citing *Jordan v. Mosley*, 487 F.3d 1350, 1357 (11th Cir. 2007)).

   Rolfe argues that only discretionary acts are at issue here.[107] Plaintiffs seem to concede this point.[108] They were therefore required to allege that Rolfe acted with actual malice. *Kidd v. Coates*, 271 Ga. 33, 33 (1999); *Daniels,* 232 Ga. App. at 813. The Georgia Supreme Court has explained that "actual malice. . . denotes express malice, i.e., a deliberate intention to do wrong, and does not include implied malice, i.e., the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203 (2007) (cleaned up) (quoting *Merrow v. Hawkins*, 266 Ga. 390, 391–92 (1996)). A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs." *Murphy*, 282 Ga. at 203. It requires "more than harboring bad feelings or ill will about another; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019).

---

[107]   ECF 31-1, at 23–24.

[108]   ECF 39, at 23–24.

Similarly, an "actual intent to cause injury" means the "actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive." *Wyno*, 305 Ga. at 531 (quoting *Kidd*, 271 Ga. 33). In *Kidd v. Coates*, the Georgia Supreme Court held that, if an officer shot an individual "intentionally and without justification, then [the officer] acted solely with the tortious 'actual intent to cause injury.'" 271 Ga. at 33.

### *a.*    **Count I**

Plaintiffs' allegations in Count I focus on the alleged lack of immediate threat posed by Brooks at the time Rolfe used deadly force.[109] Because Rolfe purportedly knew the level of force he used was unreasonable, the FAC alleges that he acted with "actual malice and an intent to injure."[110] But this circular conclusion does not necessarily follow from Plaintiffs' premise. None of their factual allegations suggest Rolfe's use of deadly force—reasonable or not—was with the intent to do anything other than to stop Brooks's flight while in possession of a weapon that could be used to cause serious injury. *Hart v. Logan*, 664 F. App'x 857, 864 (11th Cir. 2016) (per curiam) ("Even if Defendant was wrong in his

---

[109]   ECF 26, ¶¶ 184–188.

[110]   *Id.* ¶ 189.

assessment that deadly force was justified in this situation, this does not, by itself, show that Defendant acted with actual malice."); *Croland*, 782 F. App'x at 760 ("That an officer's decision to arrest may be misguided, mistaken, flawed, or unsupported by probable cause is not enough to overcome official immunity.") (internal quotation marks omitted) (citing *Mercado v. Swoope*, 340 Ga. App. 647, 651 (2017)).

Although it is undisputed that getting shot in the back by Rolfe caused Brooks's injury, Plaintiffs have pointed to no facts that plausibly support the allegation that Rolfe used deadly force *for the purpose* of causing Brooks's injury. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."); *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009) ("A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully."). Nor do Plaintiffs make any argument that the use of deadly force itself, even assuming it is in violation of the Fourth Amendment, demonstrates the actual malice necessary to overcome official immunity. *Wyno*, 305 Ga. at 531. Rolfe is entitled to official immunity with regard to Plaintiffs' state-law battery claim in Count I.

### b.   Count II

The battery claim in Count II is based on the following alleged facts, which the Court accept as true at this stage: While Brooks was lying on the ground in need of immediate medical attention after having been shot twice in the back, Rolfe unnecessarily and "forcefully kicked" him.[111] The FAC does not specifically allege that Rolfe acted with actual malice when doing so. However, Plaintiffs argue that Rolfe's actions under these circumstances are sufficient for a jury to infer actual malice.[112] The Court agrees.

Since the FAC alleges that Brooks had at that point been subdued and was lying on the ground, even bleeding and in pain, the FAC makes clear that Rolfe's only purpose of kicking him could have been to cause him further injury and pain.[113] Actual malice "can be inferred from an officer's conduct." *Hart*, 664 F. App'x at 863. The FAC's allegations are more than sufficient to allege that Rolfe had the necessary "intent to cause the harm suffered by" Brooks. *Murphy*, 282 Ga. at 203. *Cf. Gardner v. Rogers*, 224 Ga. App. 165, 169 (1996) (reversing grant of summary judgment to officer on official immunity grounds where there was

---

[111]   ECF 26, ¶¶ 191–94.

[112]   ECF 39, at 23–24.

[113]   ECF 26, ¶¶ 192–94.

sufficient evidence for a jury to conclude that the officer's actions were intentional and carried out with malice) (citations omitted).

### B.   The City's Motion

The FAC asserts one cause of action (Count IV) against the City for municipal liability under Section 1983.[114] To impose such liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), a plaintiff must show that "(1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). *See also Pilgrim v. City of Atlanta*, Civ. A. No. 1:21-cv-2472-TWT, 2022 WL 797584, at *4 (N.D. Ga. Mar. 16, 2022) (citing *McDowell*). To show a relevant custom or policy, a plaintiff can

> (1) identify[ ] an official policy; (2) identify[ ] an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identify[ ] a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights.

---

[114] *Id.* ¶¶ 202–08.

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, No. 21-10619, 2022 WL 4100687, at *3 (11th Cir. Sept. 8, 2022) (citing *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966–68 (11th Cir. 2022)).

The City moves to dismiss this claim against it under Rule 12(b)(6).[115] Its primary contention seems to be that the FAC is *too* detailed—that the pleading "does not *succinctly* state Plaintiffs' claims and the supporting facts."[116] The City concedes, however, that a custom for purposes of *Monell* liability can be shown through a widespread practice and the municipality's knowledge of that practice.[117] The Court has already concluded that Plaintiffs sufficiently allege a violation of Brooks's constitutional rights. Accordingly, it addresses below only the allegations about the City's policy and whether that policy caused the alleged constitutional violation.

### 1. Custom or policy

Plaintiffs here point to a widespread practice that is so well-settled that it constitutes the necessary custom. Specifically, Plaintiffs contend that the City's "insufficient oversight of use of deadly force incidents, unconstitutional policy,

---

[115]  ECF 34.

[116]  ECF 34-1, at 2 (emphasis in original).

[117]  ECF 34-1, at 10–11.

and inadequate training create an overwhelming risk that its officers will use deadly force when doing so is unconstitutional."[118] The pleading identifies the problematic custom as the "widespread pattern and practice" of APD officers "using department-issued firearms and excessive deadly force" in situations where the use of deadly force is not constitutionally authorized.[119] Plaintiffs allege that the City trained Rolfe that the use of deadly force is authorized to respond to any "violent, unlawful, aggressive resistance to a lawful arrest."[120] Plaintiffs also allege that the City has a custom of covering up or lying about the excessive use of force by APD officers.[121] Plaintiffs claim that then-Chief of Police Erika Shields took no steps to address that custom despite her knowledge of it.[122]

Although it is not a model of clarity, the crux of the FAC's allegations is that the City had a policy or custom that deadly force may be used against any fleeing suspect who poses a continuing danger of serious harm—even if the threat the suspect poses is not *imminent*.[123] In support, the pleading details a litany of

---

[118]   ECF 26, ¶ 202.

[119]   *Id.* ¶ 204.

[120]   *Id.* ¶ 83.

[121]   *Id.* ¶¶ 134–82.

[122]   *Id.*

[123]   *Id.* ¶¶ 85–87.

examples in which the City's policy or custom allegedly played roles in the improper use of deadly force.[124]

The City attempts to parse Plaintiffs' examples, arguing that Plaintiffs "must demonstrate that these past complaints of the use of deadly force had merit," and citing *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).[125] But *Gold* was decided after trial and the plaintiff there "presented no evidence of prior constitutional violations." *Id.* At the pleading stage, Plaintiffs' allegations are sufficiently detailed to plausibly demonstrate that the City had a policy or custom of allowing the use of deadly force in situations where it was not constitutionally permissible to do so. *Pilgrim*, 2022 WL 797584, at *4 (concluding at motion to dismiss stage that allegations about seven instances of excessive force that were not investigated were sufficient to plead a municipal policy of deliberate indifference).

The City also asserts that Plaintiffs' examples are not close enough in time to the events at issue here to be relevant.[126] The Court disagrees. Plaintiffs allege that the City's policy or custom of allowing the improper use of deadly force has

---

[124]   *Id.* ¶¶ 91–112.

[125]   ECF 34-1, at 13.

[126]   *Id.* at 17–18.

been consistently in place for several years. The FAC cites examples in every year from 2015 through 2019.[127] These incidents bear a sufficient temporal nexus to the case at hand. *See Favors v. City of Atlanta*, 849 F. App'x 813, 817–18 (11th Cir. 2021) (per curiam) (affirming ruling that ten prior incidents in the three years leading up to the event at issue were sufficient to show the City was on notice of the need to train).

### 2.   Cause of the violation

According to the FAC, Rolfe asserted that his actions were consistent with both his training and the City's policy, and that his training was the "driving force" behind his decision to shoot Brooks.[128] If true, and again assuming that an underlying constitutional violation is found to exist, then these allegations are sufficient to "raise[ ] questions about the adequacy of the City's training." *Favors*, F. App'x at 819. Nor does the City seriously contest this point.[129] Plaintiffs have plausibly alleged a *Monell* claim against the City.

---

[127]   ECF 26, ¶¶ 96, 102, 109, 112–22, 133, 183(a)–(d), 183(f).

[128]   *Id.* ¶¶ 84, 90.

[129]   *See generally* ECF 34-1.

**IV.    Conclusion**

Plaintiffs' motion to exclude extrinsic evidence [ECF 40] is **GRANTED in part** and **DENIED in part**. The motion is granted with regard to the restaurant and witness videos, but denied as to the law enforcement materials.

Rolfe's motion to dismiss the First Amended Complaint [ECF 31] is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Plaintiffs' Section 1983 claims in Counts I and II, and Plaintiffs' state-law battery claim in Count II. The motion is **GRANTED** as to the deliberate indifference claim in Count III and Plaintiffs' state-law battery claim in Count I. The City's motion to dismiss the First Amended Complaint [ECF 34] is **DENIED**.

The City's motion to withdraw its original motion to dismiss [ECF 28] is **GRANTED**. Its motion to dismiss the original complaint [ECF 14] is **DENIED as moot**. The City's and Rolfe's motions for leave to respond to Plaintiffs' supplemental authority [ECF 53; ECF 54] are **GRANTED**. The Clerk is **DIRECTED** to separately file on the docket ECF 53, at 3–7, and ECF 54-1.

Defendants are **DIRECTED** to **ANSWER** the remaining allegations of the

First Amended Complaint within 14 days after entry of this Order.

**SO ORDERED** this 29th day of September, 2022.

_____
Steven D. Grimberg
United States District Court Judge